1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SEEGER WEISS LLP**
Jonathan Shub (SBN 237708)
1515 Market St, Suite 1380
Philadelphia, PA 19102
Telephone: (215) 564-2300
Facsimile: (215) 851-8029
jshub@seegerweiss.com

Attorneys for Plaintiff and the
proposed class along with other counsel

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

EMRAH SUMER, individually and
on behalf of all others similarly
situated;

                              Plaintiff,

        v.

CARRIER CORPORATION,

                              Defendant.

Case No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

**CLASS ACTION COMPLAINT**

Plaintiff Emrah Sumer, by and through his undersigned counsel, on behalf of himself and all other persons similarly situated, bring this Class Action Complaint against Defendant Carrier Corporation and in support thereof avers as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this Class Action individually and on behalf of the Class defined herein against Defendant to obtain damages and injunctive relief related to Defendant's sale and marketing of Air Conditioning Units containing defective evaporator coils.

2.     Plaintiff commences this action to remedy the violations of applicable law in connection with Defendant's design, marketing, warranting, and servicing of its evaporator coils.

3.     Unknown to Plaintiff, and the Class, prior to or at the time of purchase, the evaporator coils contained a design defect that causes them to develop formicary corrosion. As the result of Defendant's acts and omissions in connection with the design, manufacture, marketing, warranty, sale, delivery and service of the defective evaporator coils, Plaintiff and members of the Class are entitled to damages and declaratory relief.

## THE PARTIES

4.     At all relevant times hereto, Plaintiff Emrah Sumer is a citizen and resident of Contra Costa County, California.  In or about January 2009, Plaintiff

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

purchased for household purposes an air-conditioning unit containing an evaporator coil manufactured by Defendant and used this air-conditioning unit for its intended purpose.  Plaintiff's evaporator coil failed within the warranty period, resulting in Plaintiff having to pay the labor costs for the repair of the defective evaporator coil.

5.    Defendant Carrier Corporation is a Delaware corporation with a business address of One Carrier Place in Farmington, Connecticut.

6.    Defendant is in the business of manufacturing, marketing, and distributing heating, air-conditioning, and refrigeration solutions under the brand names Carrier, Bryant, and Payne.

7.    Defendant is the world's leader in high-technology heating, air-conditioning, and refrigeration solutions. Defendant is part of UTC Building & Industrial Systems, a unit of United Technologies Corp.

## JURISDICTION AND VENUE

8.    This Court has original jurisdiction over the claims asserted herein individually and on behalf of the class pursuant to 28 U.S.C. § 1332, as amended in February 2005 by the Class Action Fairness Act.  Subject matter jurisdiction is proper because: (1) the amount in controversy in this class action exceeds five million dollars, exclusive of interest and costs; and (2) a substantial number of the members of the proposed class are citizens of a state different from that of

**CLASS ACTION COMPLAINT**

Defendant Carrier.   Personal jurisdiction is proper as Carrier has purposefully availed itself of the privilege of conducting business activities within the State of California.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claims asserted herein occurred in the Northern District of California.  At all pertinent times, Carrier was and is in the business of marketing, advertising, distributing, and selling products, including the Air Conditioning Units, throughout California and this judicial district, and nationwide, by and through various authorized dealers.   The Air Conditioning Units that form the basis of this complaint were purchased from Carrier Corporation and/or from Carrier's authorized dealers and placed in the stream of commerce by Carrier Corporation.

10.     **Intradistrict Assignment (L.R. 3-2(b)):**  This action arises in Contra Costa County, a county encompassed in this District, in that a substantial part of the events which give rise to the claims asserted herein occurred in Contra Costa County, and Defendant conducts business in Contra Costa County.

## FACTS COMMON TO THE CLASS

11.     Defendant holds itself out to the public as a manufacturer of world-renowned heating and air conditioning systems that are "trusted around the world" "to bring energy-efficient, quiet, consistent comfort to millions of people at home."

**CLASS ACTION COMPLAINT**

12.     Defendant claims it "continues to be on the forefront of innovative engineering and unsurpassed standards of excellence," claiming its "air conditioners with Puron refrigerant deliver excellent efficiency, reliability and proven performance."

13.     Defendant manufactures heating and air conditioning systems under the brand names Carrier, Bryant, and Payne.  On the Bryant website, Defendant claims, "[w]ith more than 100 years of experience, Bryant delivers a full range of durable heating and cooling systems.  So if you're looking for home comfort you can rely on, look no further."

14.     A typical residential central air-conditioning system is a split system. A split system is an air-conditioning system that uses refrigerant as the heat exchange fluid and has an evaporator coil, compressor and condenser as separate components. The compressor and condenser are combined as a single condensing unit mounted outdoors. The evaporator coil is mounted in a section of ductwork downstream of the furnace blower. Two flexible refrigerant lines, one for gas and one for liquid, connect the components.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

15.    The diagrams below depict split air-conditioning systems:




16.    The evaporator coil is the starting point of the refrigerant cycle. High pressure liquid refrigerant is throttled to the evaporator through a thermostatic expansion valve.  Because the liquid is throttled, the pressure in the evaporator coil is less than the saturation pressure of the entering liquid refrigerant. This causes the liquid refrigerant to boil. The heat needed to boil the refrigerant is drawn from the medium surrounding the evaporator, usually air or water.

17.    The evaporator coil can be considered the point of heat capture in an air-conditioning system. Heat from the water or air stream used to cool the building is transferred to the refrigerant gas leaving the evaporator.

18.    In most comfort cooling systems, the evaporator coil is a direct-expansion, finned tubular coil that has refrigerant inside the tubes. After the compressor and condenser have turned the refrigerant into a cool liquid under very

**CLASS ACTION COMPLAINT**

intense pressure, the evaporator coil allows the liquid to evaporate which extracts heat from the surrounding air, thus lowering the air temperature. A fan draws air across the finned exterior of the tubes and delivers it to the spaces being air conditioned.

19.    Air conditioner manufacturers such as Defendant have traditionally manufactured evaporator coils using copper tubing with aluminum fins mounted in a galvanized steel frame.

20.    Copper evaporator coils, however, are uniquely vulnerable to a type of degradation known as "formicary corrosion."

21.    Formicary corrosion is caused by a chemical reaction between molecules known as volatile organic compounds and the copper tubes, and results in microscopic tunnels forming within the tubing which causes the coil to leak refrigerant.

22.    Volatile organic compounds are a large group of carbon-based chemicals that are given off from a host of common household products and activities. For example, volatile organic compounds are given off by composite wood furniture and flooring, carpeting, cleaning and disinfecting products, air fresheners, cosmetics, and numerous other consumer products.

23.    Formicary corrosion is a particularly insidious defect in an evaporator coil because the resultant leakage is difficult to detect, and usually results in consumers being forced to repeatedly refill their air conditioners with refrigerant,

**CLASS ACTION COMPLAINT**

often at significant cost, which only works to mask the defect for a period of time, until the evaporator coil fails.

24.     Air conditioner manufacturers have begun to recognize copper coils' unique vulnerability to formicary corrosion as changes in housing and consumer behavior made formicary corrosion more prevalent and recognizable. For example, modern houses are typically made more energy efficient by improved sealing of windows and doors, which results in less heated/cooled air escaping the home. A natural and foreseeable result of this increase in energy efficiency is that volatile organic compounds tend to accumulate in the home's air.

25.     A number of HVAC contractors have expressed concern within the industry over the increasing incidence of formicary corrosion in air conditioning units.

26.     Defendant has internally acknowledged that "indoor coil corrosion failures" were an "industry wide" problem in a report titled, *Indoor Coil Corrosion, Identifying Common Sources*. On information and belief, the undated Report referred to a study performed in 2000 as a "recent study," thus suggesting it was authored in or around 2000 (the "2000 Industry Report") (*See* Exhibit A).

27.     The 2000 Industry Report cited an industry study, G. Tetley, M. Heidenreich and K. Smith, "The Basics of Formicary Corrosion," *The Air Conditioning, Heating & Refrigeration News*, March 30, 1998, pp. 5-6, that found "identical corrosion failure leaks in all coil brands investigated."

28.    The study contained the following photos purportedly depicting "magnified tubing cross-sections from failed coils", which described the photos as showing that "[t]he progression of the corrosion is from the exterior of the tube inward, eating away at the copper, until penetration occurs and a leak results. **Due to the corrosion process, some photos look better than others, but all corroded through the tube causing a leak at that point. All coils failed in the time period characteristic of such a failure."** (emphasis in original).



29.    Defendant was one of the manufacturers whose product is represented in the photos above. Additional manufacturers represented include: ADP, Airpro (Coleman), American Standard, Aspen, Goodman, ICP, Janoitrol, Superior, Trane and York.

**CLASS ACTION COMPLAINT**

30.     According to Defendant, the two main forms of pitting corrosion found in indoor copper coils are: (1) general pitting; and (2) formicary corrosion, sometimes called "ant's nest" corrosion.

> General pitting corrosion is caused by aggressive anion attack on the copper tube. An anion is a negatively charged chemical species. Due to this negative charge, anions aggressively search for positively charged species called cations. Copper is an abundant source of cations. Large pits resembling bite marks characterize the footprint of general pitting. These pits can often be observed with the human eye. Chlorides are the most common source of the aggressive anions known to cause general pitting corrosion.

> Formicary corrosion, on the other hand, appears as multiple tiny pinhole leaks at the surface of the copper tube that are not visible to the human eye. Upon microscopic examination, the formicary corrosion pits show networks of interconnecting tunnels through the copper wall, hence the association with ants' nests. The agents of attack involved in this corrosion mechanism are organic acids. (*See* Exhibit A)

31.     The picture on the left depicts general pitting and formicary corrosion. The picture on the right depicts formicary corrosion tunneling.



32.     According to the 2000 Industry Report, the three required conditions for formicary corrosion are the presence of oxygen, the presence of a chemically

**CLASS ACTION COMPLAINT**

corrosive agent (organic acid) and the presence of moisture. The most common organic acids are formic and acetic acids.

33.    Formicary acid is an organic acid that can be formed in the home. Formaldehyde can be converted to formic acid and then to formate in moisture. Acetic acid is converted to acetate in water. All of these compounds are aggressive to copper, resulting in the ant's nest corrosion footprint. If multiple corrosive agents are present, the result will be multiple corrosion footprints, such as general pitting and formicary corrosion.

34.    The 2000 Industry Report stressed the "fact that many manufacturers are experiencing identical failures, shows that external environmental factors are playing a role."

35.    Defendant claimed to have "scrubbed its manufacturing processes, materials and environment, including all oils and lubricants, to ensure corrosive agents are not present in the production environment," thus purportedly eliminating the manufacturing process as the source of the problem.

36.    Although the "potential sources of agents that can cause pitting corrosion in indoor coils are numerous," Defendant noted that "there is increasing evidence showing the home environment to be a primary contributor to coil corrosion." The trend in home construction is to improve energy efficiency by making homes "tighter." This "decreased ventilation results in higher

**CLASS ACTION COMPLAINT**

concentration levels of indoor contaminants. In addition, environmental refrigerant mandates now heighten the awareness that all leaks be located and repaired."

37.     While researching evaporator coil corrosion, Defendant performed "coil condensate sampling" at "failure sites," confirming "the presence of significant levels of formate and acetate in the household environments."

38.     In the 2000 Industry Report, Defendant claimed to be "actively working to design a cost-effective yet functional approach to protecting the coil from these corrosive agents," and was evaluating "a number of coil coatings" "for performance, manufacturability and cost."  Defendant claimed "few materials have performed well in providing protection to the copper tubing," stating that the "materials that effectively prevent corrosion have not been easily manufactured or cost-effective."

39.     In 2006, Defendant copyrighted a Report, *Quality, Reliability and Safety, Standards and Testing Ensure Reliable Performance* ("the "2006 Industry Report"), which discussed Defendant's Standards and Testing for split air conditioning systems. Defendant warranted the superiority of its evaporator coils, stating:

> Not all coils are created equally, so you run the risk of creating durability and efficiency problems when using off-brand coils. Carrier coil and furnace design changes are coordinated to make the two work together properly. For example, a coil could make a main safety limit nuisance trip, or a coil drain pan could get too hot. All of these potential problems are addressed before new

**CLASS ACTION COMPLAINT**

models are produced. With a Carrier coil, you get peace of mind knowing the coil and furnace are designed to maintain performance, efficiency and durability.

(*See* Exhibit B)

40.     In the 2006 Industry Report, Defendant represented and warranted that it subjected its products to corrosion testing as follows:

**CORROSION TESTING**

Carrier spends significant time qualifying its materials for corrosion resistance. It doesn't really matter how good the internal components perform if the cabinet cannot withstand the environmental elements. Because the American Society for Testing and Materials (ASTM) is accepted worldwide, Carrier uses their test methods of continuous salt fog and prohesion testing. These two accelerated test methods are extremely brutal on the unit. These tests have been instrumental in developing units specifically designed for harsh coastal conditions.

41.     Defendant also claimed to conduct engineering and design testing for evaporator coils, including cabinet sweating, condensate disposal, coil wettability, airflow performance, and safe transit tests. According to Defendant, "[e]very unit is checked for coil leaks." While "[m]ost manufacturers allow up to .25 ounce of leakage per year – or one ounce every four years, Defendant's stringent standards allow only one ounce of leakage in 10 years. Specially designed service valves ensure against leaks."

42.     At the time Defendant was making these representations, it knew or should have known that its evaporator coils were prone to formicary corrosion. For example, in the 2000 Industry Report, Defendant evidences that knowledge by

— 13 —
**CLASS ACTION COMPLAINT**

acknowledging that "indoor coil corrosion failures" were an "industry wide" problem that affected all manufacturers, including Defendant. Indeed, a picture of a Defendant coil depicting formicary corrosion was published in the 2000 Industry Report, and Defendant conducted studies about the failures. Despite this knowledge, Defendant claimed to produce high quality evaporator coils that passed stressful "corrosion testing" and leak tests while failing to disclose that they were prone to formicary corrosion.

43.    A product brochure for its Performance™ Series Evaporator Coils, copyrighted in 2006, offered an "optional tin-plated coil" with "premium corrosion protection" and five additional years of warranty coverage for its Performance™ Series Evaporator Coils Upflow/Downflow Applications. The brochure did not discuss the purpose of additional corrosion protection or reveal that uncoated copper evaporator coils were subject to formicary corrosion.

44.    In 2007, Defendant copyrighted a brochure, *Corrosion Protection for Your System, The Carrier Solution for Indoor Coil Leaks*. (*See* Exhibit C). While the brochure acknowledged that the "one issue that has become an across-the-board concern for all" namely, "indoor coil failures due to corrosion," and claimed that ArmorCoat tin plating "significantly reduc[ed] the corrosive impact of airborne pollutants," neither the 2006 nor the 2007 brochures revealed the high incidence of formicary corrosion in copper coils. Moreover, the 2007 brochure downplayed the problem of "coil corrosion" stating that the "overall incidence of

corrosion-based indoor coil failures is low nationwide," "coil corrosion seems to be more prevalent in high humidity regions," and "indoor environments are a much bigger factor than geographical or climate-based issues."

45.     Despite being aware of the susceptibility of copper coils to formicary corrosion, the increasing incidence of formicary corrosion, and the available remedies at its disposal, Defendant continued to design and manufacture its evaporator coils using copper.  Defendant only offered ArmorCoat as an optional coating.

46.     When presented with a warranty-covered repair, Defendant fixed failed evaporator coils with similarly defective evaporator coils and offered ArmorCoat as an optional coating. Defendant knew that "[t]in-plated coils last[ed] much longer in a formicary corrosive environment", provided a 10 year limited warranty for tin-plated coils and excluded its copper coils from the 10 year coverage.

47.     Another reasonable design and manufacturing technique available to air conditioner manufacturers to lessen or even prevent incidence of formicary corrosion is to manufacturer evaporator coils from aluminum. Aluminum is not susceptible to formicary corrosion. Copper coils also can be coated with a polymer sealant or tin plating.

48.     Until recently, Defendant failed to take any of the known steps that are available to reduce the susceptibility of its copper coils to formicary corrosion.

**CLASS ACTION COMPLAINT**

49.     In 2011, Defendant copyrighted an Industry Research Report, *Indoor Coil Corrosion*, *Identifying Common Sources,* ("the 2011 Industry Report") (*See* Exhibit D). The 2011 Industry Report noted that "Carrier was the first to identify formicary corrosion, and provide [its] dealers with an effective solution," namely, aluminum coils. Defendant claimed its aluminum evaporator coils: (a) are "significantly more resistant than traditional copper and equal to tin-plated coils to corrosive agents  .  .  .  that cause formicary corrosion;" (b) provide enhanced durability and reliability; and, (c) protect "against formicary as well as various other types of corrosion, preventing rusty tube sheets and pinhole leaks, while providing comfort and peace of mind to the homeowner."

50.     Defendant stated in the 2011 Industry Report that "[a]luminum coils are being phased in throughout our product line with sizing for virtually all new and existing Defendant installations."

51.     Defendant's copper evaporator coils are defective because they are manufactured with materials that, within the industry, are well known to be prone to formicary corrosion, which makes Defendant's coils unreasonably susceptible to premature rupture and refrigerant leaks under normal use and conditions.

52.     Defendant has not informed its customers of Defendant's evaporator coils' susceptibility to formicary corrosion, nor of the current availability of replacement coils which are not susceptible to formicary corrosion. Defendant knew, or reasonably should have known, that the evaporator coils in its air

**CLASS ACTION COMPLAINT**

conditioners were unreasonably susceptible to formicary corrosion and thus defective, but has failed or refused to adequately inform consumers or initiate other similar action.

53.   Defendant has not properly informed its customers of the causes of formicary corrosion, even when replacing failed evaporator coils, which would allow customers to make an informed decision about their risks.

54.   Even if Defendant replaced the defective coil in a Defendant air conditioner within the warranty period, the replacement coil was equally susceptible to formicary corrosion and likely to prematurely rupture and leak refrigerant under normal use.

55.   When a defective coil leaks to the point that it eliminates the Defendant air conditioner's ability to provide cold air within the warranty period, Defendant's standard practice is to replace the refrigerant in the unit but not the defective coil.  The consumer must pay for the costs of such "service" under the warranty.  Such a remedy, however, is only temporary and stop-gap in nature, as it fails to address the inherent defect in the Defendant coil. Once a consumer's warranty is expired, they are left with a defective product that requires a new evaporator coil, but no remedy offered by Defendant.

56.   As Defendant has known of the defects in its air conditioner coils and has failed to timely honor its express and implied warranties, the warranty has

failed of its essential purpose, and the limitations therein are null and void. Further, the limitations contained in the limited warranty are not conspicuous.

57.     Despite knowing of the defects in the Defendant air conditioner coils, Defendant has not notified all purchasers, builders, and/or homeowners with a Defendant copper evaporator coil of the defect nor provided uniform relief.

58.     Plaintiff and members of the Classes have not received the value for which they, or their builder, bargained when the Defendant air conditioning systems were purchased. There is a difference in value between the Defendant's product as represented and its defective product as measured by the increased purchase price of air conditioning units containing aluminum coils, the premium that must be paid for the optional tin-coating, and the longer warranty period for air conditioning units not using the standard copper evaporator coil.

**FACTS SPECIFIC TO PLAINTIFF**

59.     In or about January 2009, Plaintiff purchased a Bryant furnace and air conditioning system, which contained a copper evaporator coil, from Atlas Heating and Air Conditioning in Oakland, California.

60.     In or about May 2009, Plaintiff's AC unit stopped blowing cold air. Shortly thereafter, Atlas came out and identified a leak in Plaintiff's evaporator coil and replaced the coil with another copper evaporator coil at no cost to Plaintiff.

**CLASS ACTION COMPLAINT**

61.    In approximately April 2014, Plaintiff's AC unit again stopped blowing cold air.

62.    In May 2014, Atlas Heating and Air Conditioning came out and diagnosed Plaintiff's coil as leaking, which cost Plaintiff $89.

63.    Plaintiff then contacted High Performance because he wanted a second opinion of the problem.   High Performance also identified a leak in Plaintiff's coil, and Plaintiff paid $205.00 for the service visit.

64.    Plaintiff contacted Defendant, who indicated that the coil was under warranty.   However, Defendant only agreed to provide a new coil to Plaintiff, while Plaintiff paid approximately $500.00 in labor costs to Atlas to replace the coil.   Plaintiff was told by Atlas that Defendant had recently begun offering an aluminum evaporator coil. Therefore, Plaintiff's leaking copper evaporator coil was replaced with an aluminum evaporator coil.

## TOLLING

65.    **Discovery Rule**. Plaintiff's claims accrued upon discovery that the Air Conditioners were failing to produce cold air as a result of evaporator coils that leaked prematurely.   Because Carrier concealed the fact that the Air Conditioners have Defects, Plaintiff did not discover and could not have discovered this fact through reasonable and diligent investigation until after he experienced the

**CLASS ACTION COMPLAINT**

1   Defects, could reasonably exclude other potential causes of the problems, and

2   discovered that their Air Conditioners caused the problems.

3   66.   **Active Concealment Tolling**.   The statute of limitations has been

4

5   tolled by Carrier's knowing and active concealment of the fact that the Air

6   Conditioners contain evaporator coils that are prone to premature leaking.   Carrier

7   kept Plaintiff ignorant of vital information essential to the pursuit of his claim,

8

9   without any fault or lack of diligence on the part of Plaintiff.   Plaintiff could not

10  reasonably have discovered the fact that his Air Conditioner contained defective

11  evaporator coils that would leak prematurely due to the defect because the defect

12

13  was latent.

14  67.   **Estoppel**. Carrier was and is under a continuous duty to disclose to

15  Plaintiff the true character, quality, and nature of the Air Conditioners and

16

17  evaporator coils.   At all relevant times, and continuing to this day, Carrier

18  knowingly, affirmatively, and actively misrepresented and concealed the true

19  character, quality, and nature of the Air Conditioners and evaporator coils.

20

21  Plaintiff reasonably relied upon Carrier's affirmative misrepresentations and

22  knowing, affirmative, and/or active concealment.   Based on the foregoing, Carrier

23  is estopped from relying on any statutes of limitation in defense of this action.

24

25

26

27

28

**CLASS ACTION COMPLAINT**

## CLASS ACTION ALLEGATIONS

68.    Description of the Class:  The Class that Plaintiff seeks to represent are defined as follows:

> All people residing in California who purchased—primarily for personal, family, or household purposes and not for resale—an air-conditioning unit containing a copper evaporator coil designed, manufactured, distributed, marketed, sold, warranted, or serviced by Defendant or a copper evaporator coil designed, manufactured, distributed, marketed, sold, warranted, or serviced by Defendant as defined by California Civil Code 1791(a).

69.    Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

70.    Plaintiff reserves the right to modify the Class descriptions and the Class period based on the results of discovery.

71.    Plaintiff and the Class bring this action for equitable, injunctive and declaratory relief pursuant to subdivisions (b)(1), (b)(2) and (b)(3) of Rule 23 of the Federal Rules of Civil Procedure.

72.    Numerosity:  The proposed Class is so numerous that individual joinder of all its members is impracticable.  The total number of Class members is

**CLASS ACTION COMPLAINT**

at least in the hundreds and members of the class are geographically dispersed across California and the nation.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.  The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

73.  <u>Common Questions of Law and Fact Predominate</u>:  There are questions of law and fact common to the representative Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members.  Common questions of fact and law include, but are not limited to, the following:

(a)  Whether Defendant's air-conditioning systems are defectively designed or manufactured;

(b)  Whether Defendant's copper evaporator coils are defectively designed or manufactured;

(c)  Whether Defendant knew or should have known about the defects before distributing its air-conditioning units or copper evaporator coils to Plaintiff and class members;

(d)  Whether Defendant made material omissions or misrepresentations;

(e)  Whether Defendant's copper evaporator coils have not performed in accordance with the reasonable expectations of ordinary consumers;

(f)  Whether Defendant concealed the aforementioned

defects from Plaintiff and class members;

(g)     Whether Defendant breached its express warranty to Plaintiff and class members;

(h)     Whether the terms of Defendant's written warranties were unconscionable or failed their essential purpose;

(i)     Whether Carrier's conduct constitutes deceptive, unfair and/or oppressive conduct as defined under the California Unfair Business Practices Act (UCL) (Cal. Bus. & Prof. Code §17200 *et seq.*);

(j)     Whether Carrier engaged in illegal business practices by failing to recall or effectively repair the evaporator coils without charging Plaintiff and the Class;

(k)     Whether Carrier violated the consumer protection statutes/false advertising statutes/false business practices statutes applicable to each class;

(l)     Whether Carrier breached its duty of good faith and fair dealing;

(m)     Whether Defendant failed to warn Plaintiff and class members of potential defects or omitted critical information in its marketing and sales materials;

(n)     Whether Defendant was unjustly enriched by receiving money in exchange for air conditioners and copper evaporator coils that were defective;

(o)     Whether Defendant should be ordered to disgorge all or part of the ill-gotten profits it received from the sale of defective air-conditioners and copper evaporator coils;

(p)     Whether Plaintiff and class members are entitled to damages, including compensatory, exemplary, and statutory

— 23 —
**CLASS ACTION COMPLAINT**

damages;

(q)    Whether Defendant should be enjoined from selling and marketing its defective air conditioners and copper evaporator coils; and

(r)    Whether Plaintiff and class members of the Classes are entitled to declaratory relief.

74.    <u>Typicality</u>:    Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class have been similarly affected by Defendant's common course of conduct since they all have or had air conditioning units containing defective copper evaporator coils.

75.    <u>Adequacy of Representation</u>:    Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained counsel with substantial experience in prosecuting complex and class action litigation.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so.  Neither Plaintiff nor his counsel has any interests adverse to those of the Class.

76.    <u>Superiority of a Class Action</u>:    Plaintiff and the members of the Class suffered, and will continue to suffer, harm as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.    Individual joinder of all members of the class is impractical.  While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each

**CLASS ACTION COMPLAINT**

Class member are too small to warrant the expense of individual suits.  Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct.  The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system, and protects the rights of the class member. Furthermore, for many, if not most, class members, a class action is the only feasible mechanism that allows therein an opportunity for legal redress and justice.

77.    Adjudication of individual class members' claims with respect to the Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other class members to protect their interests.

78.    Plaintiff does not anticipate any difficulty in the management of this litigation.

79.    Carrier has, or has access to, address information for the Class members, which may be used for the purpose of providing notice of the pendency of this action.

**CLASS ACTION COMPLAINT**

## THE PURPORTED WARRANTY LIMITATIONS ARE VOID AND INVALID

80.   Defendant provides a warranty to purchasers of its air-conditioning units and evaporator. The evaporator coil is covered by a five-year parts limited warranty and the air-conditioning units are covered by a ten-year parts limited warranty. The warranties do not cover labor.

81.   Defendant's warranty failed its essential purpose because the Defendant's air conditioners contained defective evaporator coils that were defective at the time Plaintiff and Class members acquired their air-conditioning units and evaporator coils.

82.   Defendant's warranty also failed its essential purpose because none of the remedies offered by Defendant give purchasers the benefit of their bargain, *i.e.* a merchantable air conditioner and evaporator coil.

83.   Defendant's limitation of damages is ineffective because Defendant sold its air-conditioning units with evaporator coils that were unreasonably susceptible to formicary corrosion, which Defendant's limited remedies fails to address sufficiently.

84.   Indeed, in 2009 Defendant provided a ten-year limited warranty on its tin-plated coils "which last much longer in a formicary corrosive environment." But Defendant excluded copper coils from the ten-year coverage.

85.     Defendant's warranty disclaimer is also ineffective because Defendant does not provide its warranty to purchasers of its air conditioners and evaporator coils before or at the time of purchase. Consumers only learn of such purported disclaimers at the time of their products' installation, meaning these limitations cannot be considered to be a part of Plaintiff or class members' bargain.

## FIRST CAUSE OF ACTION
## (VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW)

86.     Plaintiff incorporates the allegations set forth in the preceding paragraphs of this Complaint as if set forth in this Count.

87.     Any conduct that is unlawful, unfair or deceptive constitutes a violation of the California Unfair Competition Law, Business and Professions Code §17200, *et seq*. (the "UCL").

88.     Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Carrier's actions.  Plaintiff and the Class paid a premium price for their Carrier Air Conditioners that contained the defective evaporator coils, expecting high quality and a functioning machine with functioning coils.  Nevertheless, the Air Conditioners contained evaporator coils that leaked prematurely rendering the Air Conditioners unable to produce cold air. Plaintiff thus did not obtain the value of the product for which he paid.

89.     The violation of any law constitutes an unlawful business practice under California Business & Professions Code § 17200.

**CLASS ACTION COMPLAINT**

90.     As detailed more fully in the following paragraphs, the acts and practices alleged herein were intended to and did result in the sale of Air Conditioners in violation of the CLRA.  Defendant's conduct further constitutes breach of warranty, breach of the implied covenant of good faith and fair dealing and unjust enrichment.

91.     By violating these legal duties, Defendant has engaged in unlawful business acts and practices which constitute unfair competition within the meaning of Business & Professions Code § 17200.

92.     Carrier actively and extensively advertises, markets and promotes the Air Conditioners based on promises that the Air Conditioners "deliver excellent efficiency, reliability and proven performance."

93.     Throughout the class period, Carrier has maintained a website and published marketing materials that are the primary tools for advertising and marketing the Air Conditioners.

94.     Plaintiff and Class members each purchased a Carrier Air Conditioner containing a defective Evaporator Coil.  When doing so, Plaintiff reviewed and relied on the representations as detailed above.  Carrier advertised that their Air Conditioners "deliver excellent efficiency, reliability and proven performance", and Plaintiff and the Class relied on these representations when purchasing the Air Conditioners.  Nevertheless, the Air Conditioners contained evaporator coils that leaked prematurely because of the Defects and were unable to be used as intended.

**CLASS ACTION COMPLAINT**

In addition, the warranty repairs done by Carrier at a cost to Plaintiff and the Class were ineffective and merely delayed the ultimate exposure of the Defects to Plaintiff and the Class.

95.    Carrier omitted any information about the high likelihood of Evaporator Coil problems.   Plaintiff and the Class contacted Carrier and/or authorized dealers to request repairs, but the repairs did not fix the Defect, and the Air Conditioners continued to experience Evaporator Coil problems.

96.    Carrier intended that Plaintiff and the Class would rely on Carrier's omissions in purchasing their Air Conditioners, unaware of the material facts described above.   This conduct constitutes consumer fraud, an unfair business practice and violation of the UCL.   Had Plaintiff known that the Evaporator Coils were defective and would develop premature leakage, Plaintiff would either not have purchased the Air Conditioner or would have negotiated a lower price based on this knowledge.

97.    Carrier's failure to disclose the Evaporator Coils' propensity to develop premature leakage, along with its futile repairs of the Air Conditioners, is likely to deceive the Class.   Carrier has thus committed deceptive acts or practices within the meaning of the UCL by engaging in the acts and practices alleged herein.

98.    Under California Business & Professions Code § 17200, any business act or practice that is unethical, oppressive, unscrupulous and/or substantially

injurious to consumers, or that violates a legislatively declared policy, constitutes an unfair business act or practice.

99.    Carrier's conduct adversely affects the public interest and is a proximate cause of injury and money damages to Plaintiff and the Class in an amount to be proven at trial.  Carrier is liable to Plaintiff and the Class for all appropriate damages allowed under the law, costs and attorneys' fees, including as private attorney generals under Cal. Code Civ. Proc. §1021.5.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## SECOND CAUSE OF ACTION
## (VIOLATION OF CALIFORNIA FALSE ADVERTISING ACT)

100.   Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

101.   California Business & Professional Code § 17500, *et seq*., prohibits false advertising.

102.   Carrier is a "person" as defined under Cal. Bus. & Prof. Code § 17506.

103.   Carrier falsely advertised the performance, uses, benefits, characteristics, quality, grade and standard of the Air Conditioners containing defective evaporator coils by omission and misrepresentation as alleged herein.

104.   Defendant's misrepresentations and omissions, as described more fully above, did deceive, and are likely to deceive Plaintiff and the Class.

**CLASS ACTION COMPLAINT**

105.   Plaintiff relied upon these material misrepresentations and omissions to their detriment in that they would not have purchased the Air Conditioners or would have paid less had they known of the Defect and evaporator coil problems that Defendant did not disclose to them.

106.   The above-described false and misleading advertising conducted by Carrier continues to this day and presents a threat to the general public in that Carrier has not acknowledged its wrongdoing to consumers or publicly issued an appropriate conspicuous notice to existing or prospective purchasers of its Air Conditioners, and has not disclosed the presence of the Defect, nor the propensity of evaporator coil problems, which resulted in Plaintiff being deceived and misled.

107.   As a result of the above-described conduct, Carrier has been, and will continue to be unjustly enriched at the expense of Plaintiff.

108.   Pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17535, Plaintiff and the Class seek an order 1) requiring Carrier to immediately cease the unlawful, unfair, and/ or fraudulent business acts and/or practices and false and misleading advertising complained of herein; 2) enjoining Carrier from continuing to misrepresent the Air Conditioners' uses, benefits, characteristics, standard, quality and grade by omitting from its labels, advertising and communications regarding the Air Conditioners that the Defect causes evaporator coil problems to develop which in turn renders the air conditioner unable to produce cold air, and their owners to pay for futile repairs; and 3) requiring Defendant to repair or replace the

Air Conditioners so that they do not develop evaporator coil problems; or provide full restitution to the Plaintiff and Class members of all monies wrongfully acquired by means of such acts of unfair competition and false advertising, plus interest, costs, and attorneys' fees.

## THIRD CAUSE OF ACTION
## (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

109.   Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

110.   The covenant of good faith and fair dealing prohibits Carrier from taking any action that would have the effect of depriving Plaintiff and the Class from receiving the full benefits of their purchase.

111.   Carrier has breached the implied covenant of good faith and fair dealing.

112.   Carrier also breached the implied covenant of good faith and fair dealing by failing to provide adequate notice to Plaintiff and the Class regarding the Defect which causes the evaporator coils to leak prematurely.  Plaintiff and the Class reasonably expect that when they purchase an Air Conditioner with an evaporator coil, it will produce cold air and not leak prematurely.  Plaintiff and the Class also reasonably expect that when Carrier and/or its authorized retailers service the Air Conditioners, the service will actually repair the problem, and the

problem will not keep coming back in the future. By failing to provide adequate notice, Carrier deprives Plaintiff and the Class of the ability to obtain the benefits of their purchase.

113.   As a direct and proximate result of Carrier's breach of the implied covenant of good faith and fair dealing, Plaintiff and the Class have been damaged in that they purchased the Air Conditioners that they would not have purchased, or paid more than they would have had they known of the Defect.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

### FOURTH CAUSE OF ACTION
### (VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT)

114.   Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

115.   Plaintiff and other Class members are consumers within the meaning of the CLRA given that Defendant's business activities involve trade or commerce, are addressed to the consumer market generally, and otherwise implicate consumer protection concerns.   Plaintiff and other Class members have used the Air Conditioners for personal, family and/or household purposes.

116.   The acts and practices of Defendant as described above were intended to deceive Plaintiffs and the Class members as described herein and have resulted

**CLASS ACTION COMPLAINT**

and will result in damages to Plaintiff and the Class members.   These actions violated and continue to violate the CLRA in at least the following respects:

(a)     In violation of § 1770(a)(5) of the CLRA, Defendant's acts and practices constitute representations that the Air Conditioners containing evaporator coils have characteristics, uses and/or benefits which they does not;

(b)     In violation of § 1770(a)(7) of the CLRA, Defendant's acts and practices constitute representations that the Air Conditioners containing evaporator coils are of a particular quality which they is not; and

(c)     In violation of § 1770(a)(9) of the CLRA, Defendant's acts and practices constitute the advertisement of the Air Conditioners containing evaporator coils in question without the intent to sell them as advertised.

117.   By reason of the foregoing, Plaintiff and the California Class members have been irreparably harmed.

118.   By committing the acts alleged above, Defendants violated the CLRA.

119.   In compliance with the provisions of California Civil Code § 1782, contemporaneous with the filing of this Complaint, Plaintiff notified Defendant in writing of the particular violations of § 1770 of the Act and demanded Defendant to rectify the actions described above by refunding the purchase price and give notice to all affected consumers of their intent to do so.   Plaintiff sent this notice by certified mail, return receipt requested, to Defendant's principal place of business.

120.   Should Defendant fail to adequately respond to Plaintiff's demand to rectify the wrongful conduct described above on behalf of all Class members

**CLASS ACTION COMPLAINT**

within thirty days after receipt of the § 1782 notice, Plaintiff will amend his complaint and seek actual and punitive damages against Defendant for violations of the CLRA on behalf of themselves and the California Class.

121.   Plaintiff and Class members are entitled, pursuant to California Civil Code §§ 1780(a)(2) and (3), to an order: (1) enjoining the above-described wrongful acts and practices; and (2) requiring the repair or replacement of Plaintiffs' and the Class' Evaporator Coils.  Plaintiff and the Class are also entitled to the payment of costs and attorneys' fees and any other relief deemed appropriate and proper by the Court under California Civil Code § 1780(e).

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## FIFTH CAUSE OF ACTION
## (BREACH OF IMPLIED WARRANTIES)

122.   Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

123.   Plaintiff seeks to recover for the Class based on Carrier's breach of implied warranty under the Song-Beverly Consumer Warranty Act.

124.   Carrier marketed and sold the Air Conditioners, which it placed into the stream of commerce.  Carrier knew or had reason to know of the specific use for which the Air Conditioners with evaporator coils were purchased, and it impliedly warranted that the Air conditioners and evaporator coils were of merchantable quality and fit for such use.

125.   Plaintiff and the other Class members relied on Carrier's representations and omissions as described above and relied upon Carrier's implied warranty in purchasing the Air Conditioners and evaporator coils.

126.   Plaintiff's Evaporator Coil was of unmerchantable quality and became unfit for its ordinary purpose because Carrier's design and/or manufacturing Defects discussed above render the Air Conditioners incapable of producing cold air as a result of evaporator coils that leak prematurely.

127.   Plaintiff's and other Class members' Air Conditioners and Evaporator Coils do not conform to the promises or affirmations of fact made in advertising and marketing materials including air conditioners that "deliver excellent efficiency, reliability and proven performance."

128.   Carrier's waiver and/or limits on implied warranties are unconscionable, unenforceable, and/or illegal.  Plaintiff had no meaningful choice in determining those time limitations; the warranties were written by Defendant without input from Plaintiff; the Warranty overwhelmingly favors Defendant by unreasonably limiting the warranty to 5 years on a product that could reasonably be expected to last 20 or more years; a gross disparity in bargaining power existed as between Defendant and Plaintiff and Class Members; Carrier knew or should have known that its Air Conditioning evaporator coils were defective at the time of sale and would develop leaks before the end of their useful lives, and Plaintiff was

unfairly surprised by the time limitation upon discovering that Carrier knew the Air Conditioners have the Evaporator coil problems.

129.   Plaintiff's Air Conditioner became unfit for its ordinary purpose of providing cool air within the implied warranty period because the evaporator coils leak prematurely rending the Air Conditioner unable to provide cold air to Plaintiff's home.

130.   Plaintiff and the other Class members have been damaged as described herein as a direct and proximate result of the failure of Carrier to honor its implied warranty as Plaintiff and Class members would not have purchased the Air Conditioners and evaporator coils or would have paid less for them had they known about the Defect and the evaporator coil problems.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## SIXTH CAUSE OF ACTION
## (BREACH OF EXPRESS WARRANTIES)

131.   Plaintiff incorporates the allegations set forth in the preceding paragraphs of this Complaint as if set forth in this Count.

132.   By promising in its user manuals, website, brochures, specifications, and models working air conditioners that necessarily included working evaporator coils, Defendant expressly warranted to Plaintiff—i.e., made an affirmation of fact or a promise to Plaintiff or through advertising, made a quality- or merits-based representation to Plaintiff—that its air conditioners and their evaporator coils would

**CLASS ACTION COMPLAINT**

1
2
3
4

work as promised. And Defendant's express warranty of its air conditioners as working and necessarily including working evaporator coils was part of the basis of the parties' bargain.

5
6
7
8
9

133.   As a company whose revenues are driven significantly by consumer purchases, Defendant aimed its representations directly at Plaintiff and other consumers, urging Plaintiff and consumers to purchase its air conditioners or replacement evaporator coils.

10
11
12
13
14
15
16

134.   Defendant breached its express warranty because Defendant's air conditioners—by virtue of their defective evaporator coils—did not work as expressly promised. Specifically, Plaintiff's air conditioner was defective in that its evaporator coil was unreasonably susceptible to formicary corrosion and failure, thus rendering his air conditioner unfit for its ordinary use.

17
18
19
20
21

135.   Relying on Defendant's representations, Plaintiff and class members purchased air conditioners or replacement evaporator coils under the mistaken belief that their air conditioners would not fail as they did due to defective evaporator coils or replacement evaporator coils.

22
23
24
25
26
27
28

136.   Defendant's breach of its express warranty proximately damaged Plaintiff in that (a) he paid a price premium due to Defendant's misrepresentations and omissions of material fact concerning the packaging, marketing, advertising relating to his air conditioner, including his air conditioner's evaporator coil; (b) Defendant's air conditioner, and its evaporator coil, did not have the attributes or

value that Defendant promised, (c) Plaintiff paid to repair his defective air conditioner and evaporator coil; and (d) Plaintiff paid to replace his failed evaporator coils.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

### SEVENTH CAUSE OF ACTION
### (UNJUST ENRICHMENT)

137.   Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

138.   Plaintiff conferred a benefit upon Defendant; namely, Plaintiff paid money for his air conditioner that contained an evaporator coil and Defendant profited from that transaction.

139.   Defendant retained that benefit with knowledge and under circumstances that make it inequitable for it to do so without providing Plaintiff this benefit's value. Specifically, Defendant retained Plaintiff's money in the form of Carrier's profits despite having provided him an air conditioner that contains defective evaporator coils.

140.   Plaintiff purchased Defendant's air conditioner and evaporator coil from Defendant's agents, in part, because of Defendant's advertisements, marketing, and product claims (as well as because of the fact that Defendant does not sell to consumers), thus creating a relationship between the parties despite the fact that Plaintiff did not purchase his air conditioner directly from Defendant.

141.   Through Defendant's marketing, advertising, product packaging, and print publications, specifically designed to entice Plaintiff to buy its air conditioners, Defendant misrepresented that its air conditioners and evaporator coils were free from design defect.

142.   As the result of Plaintiff's purchase of Defendant's air conditioner, Defendant has retained a benefit from Plaintiff (*i.e.*, Plaintiff's money received as profit) under circumstances where it would be unjust to do so without payment to Plaintiff.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## EIGHTH CAUSE OF ACTION
## (FRAUDULENT CONCEALMENT)

143. Plaintiff incorporates the allegations set forth in the preceding paragraphs of this Complaint as if set forth in this Count.

144.   Defendant made a false representation or concealment of fact concerning the efficacy of its air conditioners (because of their coil defect), or in the face of a duty to disclose, concealed this material fact from Plaintiff.

145.   Defendant knew or should have known that its evaporator coils were defectively designed; were not fit for their ordinary and intended use; and neither performed in accordance with Defendant's advertisements, marketing materials, or warranties disseminated.

**CLASS ACTION COMPLAINT**

146.   Defendant had exclusive knowledge of their defective coils at the time Plaintiff bought her air conditioner. This defect is latent and not something that Plaintiff, in the exercise of reasonable diligence, could or should have discovered before purchase.

147.   Defendant undertook active and ongoing steps to conceal its evaporator coils' defect, and Plaintiff is aware of nothing in Defendant advertising, publicity, or marketing materials that disclosed the truth about this defect, despite Defendant's awareness of the problem.

148.   This false representation or concealed fact was material to Defendant's transaction with Plaintiff because it affected the ability of Plaintiff's air conditioner to operate.

149.   Defendant intentionally concealed or failed to disclose these material facts for the purpose of inducing Plaintiff to purchase its defective air conditioner.

150.   Defendant made its representation about, or concealed the fact that, its air conditioners' evaporator coils were defective with falsely, with knowledge of such falsity, or with such utter disregard and recklessness as to whether Defendant's represented or concealed information was true or false that knowledge may be inferred.

151.   Defendant made its representation about, or concealed the fact that, its air conditioners' evaporator coils were defective with the intent of misleading Plaintiff into relying upon its representation of concealment.

152.   Defendant's partial disclosures related to the need for tin-plating and/or aluminum evaporator coils and the potential for formicary corrosion imposed on Defendant a duty to fully disclose all relevant facts related to the defect in the copper evaporator coils to prevent misleading Plaintiff and the Class.

153.   Plaintiff justifiably relied on Defendant's representation or concealment and was proximately injured by his reliance because: (a) he would not have purchased the air conditioners or evaporator coils on the same terms if the true facts concerning the defective evaporator coil had been known; (b) he paid a price premium for her air conditioner, including any evaporator coil; and (c) his air conditioner and evaporator coil did not perform as Defendant promised.   Plaintiff also would have initiated this suit earlier had the defect been disclosed to him.

## NINTH CAUSE OF ACTION
## (DECLARATORY RELIEF)

154.   Plaintiff incorporates the allegations set forth in the preceding paragraphs of this Complaint as if set forth in this Count.

155.   An actual controversy exists between Plaintiff Defendant regarding the marketing and sale of the Defendant's defective air conditioners.

156.   According to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

**CLASS ACTION COMPLAINT**

157.   Defendant marketed and sold, and continues to market and sell, air conditioners systems with defective evaporator coils, while concealing this defect from consumers.

158.   Defendant has acted or refused to act in such manner as final injunctive relief or corresponding declaratory relief within the meaning of Fed. R. Civ. P. 23(b)(2).

159.   To this end, Plaintiff seeks declaratory relief, ruling that:

(a)   Defendant's air conditioners contain defective evaporator coils that are unreasonably susceptible to formicary corrosion;

(b)   Certain parts and limitations of Defendant's warranty are unconscionable and void because they fail of their essential purpose;

(c)   Defendant must notify air conditioner owners of the defect with its evaporator coils;

(d)   The warranty's durational limitations are removed;

(e)   Defendant will reassess all earlier warranty claims and pay the full cost of repairs and damages, including labor;

(f)   At its own cost, Defendant will replace any Class member's evaporator coil with a non-copper coil;

(g)   Defendant will pay the cost of inspection to determine whether any class members' evaporator coils need replacement; and

(h)   Any limitation of damages or disclaimer or warranty by Defendant with regard to the defective evaporator coils are void.

**CLASS ACTION COMPLAINT**

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, seeks judgment against Defendant as follows:

A.   An order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and his attorneys as class counsel;

B.   An order finding in favor of Plaintiff and on all counts asserted;

C.   An order awarding damages in an amount to be determined by the Court or jury;

D.   An order for prejudgment interest on all amounts awarded;

E.   An order of restitution and all other forms of injunctive or equitable relief;

F.   An order awarding Plaintiff and the Class reasonable attorneys' fees, expenses, and costs of suit; and

G.   All further relief as the Court deems appropriate.

DATED: September 23, 2014          **SEEGER WEISS LLP**

By: s/ Jonathan Shub
Jonathan Shub

Jonathan Shub (SBN 237708)
1515 Market St, Suite 1380
Philadelphia, PA 19102
Telephone: (215) 564-2300
Facsimile: (215) 851-8029
jshub@seegerweiss.com

— 44 —

**CLASS ACTION COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Richard J. Burke
QUANTUM LEGAL LLC
1010 Market Street, Suite 1310
St. Louis, MO 63101

Jeffrey A. Leon
Jamie E. Weiss
Zachary Jacobs
QUANTUM LEGAL LLC
513 Central Avenue, 3rd Floor
Highland Park, IL 60035
Telephone: (847) 433-4500


*Counsel for Plaintiff and the Class*

**CLASS ACTION COMPLAINT**

1

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury in the instant action.

2

3

DATED:  September 23, 2014                **SEEGER WEISS LLP**

4

5

6                                              By: s/Jonathan Shub
                                                  Jonathan Shub
7

8                                              *Counsel for Plaintiff and the class*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLASS ACTION COMPLAINT**