UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMRAH SUMER,<br><br>    Plaintiff,<br><br>    v.<br><br>CARRIER CORPORATION,<br><br>    Defendant. | Case No. 14-cv-04271-VC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 33 |

The Court previously granted Carrier Corporation's motion to dismiss Emrah Sumer's First Amended Complaint ("FAC"). Docket No. 27. The Court dismissed several claims with prejudice, but gave Sumer leave to amend his statutory and common law claims premised on a theory of fraudulent omission. Sumer filed a Second Amended Complaint ("SAC"), and Carrier has again moved to dismiss. The motion is granted.

Sumer alleges Carrier fraudulently failed to disclose to purchasers of its air conditioning units that the copper evaporator coils in those units were defective due to their susceptibility to formicary corrosion. To state a claim for fraud by omission, a plaintiff must allege a duty to disclose the omitted facts. *See Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1043 (N.D. Cal. 2014). This is true whether the claim is brought under California's Consumer Legal Remedies Act, Unfair Competition Law, False Advertising Law, or common law. *See Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1132 (N.D. Cal. 2013). A duty to disclose arises:

> (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

*LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 543 (Ct. App. 1997). Sumer argues that Carrier's duty to disclose arose both from partial representations that Carrier made in a 2007 brochure for its ArmorCoat protective coating, and from Carrier's exclusive knowledge that copper coils were "unreasonably susceptible to formicary corrosion." Docket No. 34, p. 9.

With respect to the "partial representation" theory, Sumer has no standing to pursue it. In the prior version of the complaint, Sumer appeared to allege that he had reviewed the 2007 brochure. The Court therefore ruled on the merits, concluding that the FAC didn't adequately allege Carrier was aware that the problems with formicary corrosion of copper coils were more serious than what the 2007 brochure disclosed. Now, in the SAC, Sumer alleges he never saw the brochure. Because he never saw the brochure, he can't pursue a fraudulent omission claim based on the theory that the brochure was a "partial representation" that was necessarily misleading absent a fuller disclosure. *See Roddenberry v. Roddenberry*, 51 Cal. Rptr. 2d 907, 926 (Ct. App. 1996) ("[A] non-disclosure claim arises when the defendant makes representations but fails to disclose additional facts which materially qualify the facts disclosed, or which render the disclosure likely to mislead."); *see also In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009) ("Reliance is an essential element of . . . fraud. . . . [R]eliance is proved by showing that the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct." (internal quotation marks omitted)).

Furthermore, even if Sumer had standing, Sumer's "partial representation" theory would fail for the same reason it failed previously—the SAC contains nothing beyond conclusory allegations that Carrier's knowledge about the formicary corrosion problem at the time Sumer purchased his air conditioner was qualitatively different from the information it disclosed to its customers in the brochure. *See Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 927 (N.D. Cal. 2012) ("In order to give rise to a duty to disclose, a complaint must contain specific allegations demonstrating the manufacturer's knowledge of the alleged defect *at the time of sale*."). If anything, the facts alleged in the SAC suggest that Carrier was forthcoming in its brochure. The disclosures in the brochure are qualitatively similar to the contents of Carrier's 2000 "industry report," which the SAC appears to allege was not available to customers. SAC ¶ 3. If Carrier intended to conceal information from customers, one would expect the "industry report" to be more forthcoming about the corrosion problem than the brochure disseminated to consumers.[1]

---

[1] The SAC alleges that statements by Carrier in the industry report are also false, but those allegations are nothing more than conclusory. Nor does the SAC contain any suggestion about

1  Therefore, the only possible theory on which Sumer could proceed is his second one,
2  namely, that Carrier failed to disclose to him material facts about the alleged defect, of which
3  Carrier had "exclusive knowledge." But Sumer's allegations in support of his "partial
4  representation" theory defeat his "exclusive knowledge" theory. The above-referenced 2007
5  brochure spoke in some detail about corrosion problems with copper coils in certain environments.
6  And the above-referenced 2000 "industry report" produced by Carrier similarly discussed the
7  tendency of copper coils to corrode. Given the SAC's allegations about Carrier's efforts to
8  disseminate knowledge about this issue both within the industry and to its customers, there is no
9  plausible allegation that Carrier had "exclusive knowledge" of the alleged defect.

10  To be sure, courts have held that the concept of "exclusive knowledge" should not be
11  applied with strict literalism. For example, if other customers are aware of a defect, and if they
12  complain about that defect on the company's website, the company does not, strictly speaking,
13  have exclusive knowledge of the problem. But in these circumstances the company might still
14  have a duty to disclose a defect under an "exclusive knowledge" theory. Knowledge of the defect
15  has not been widely disseminated, so the defect remains effectively concealed from customers
16  who might be buying the product. Moreover, the fact that customers might, with some effort, be
17  able to learn of a problem with a product would not preclude a plaintiff from plausibly alleging
18  that the company was aware of additional information about the defect that should be disclosed.
19  *See, e.g.*, *Wolph v. Acer Am. Corp.*, No. C 09–1314, 2009 WL 2969467, at *4 (N.D. Cal. Sept. 14,
20  2009). But here, the SAC alleges that Carrier made affirmative efforts to disclose the formicary
21  corrosion problem, both to customers by way of the 2007 brochure and to the industry by way of
22  the 2000 report. This is not a case where information about the corrosion problem was merely
23  trickling into the public domain. And as discussed previously, the SAC does not plausibly allege
24  that Carrier's knowledge about formicary corrosion was qualitatively different from the contents of
25  the 2000 report or the 2007 brochure. If it did, perhaps Sumer could pursue a fraudulent omission
26  claim under an "exclusive knowledge" theory. *See, e.g.*, *Falk v. Gen. Motors Corp.*, 496 F. Supp.

28  why Carrier would make false statements in an "industry report."

3

2d 1088, 1096 (N.D. Cal. 2007) (concluding that the plaintiff had stated a claim based on GM's exclusive knowledge of a defect—despite the fact that customer complaints about the defect were available online—where GM was alleged to have in fact known a lot more about the defect, including information unavailable to the public).  But because the SAC does not plausibly allege that Carrier had superior knowledge, Sumer fails to state a claim.

Overall, this case suffers from a disconnect between Sumer's actual experience and the legal theories his lawyer wishes to pursue against Carrier.  For example, the FAC included claims for breach of warranty even though Sumer received *more* coverage than what his warranty called for.  (The Court dismissed these claims with prejudice in the prior round.)  And now the bulk of the SAC is geared towards establishing that Carrier's public statements about the susceptibility of copper coils to corrosion were misleading, even though this particular plaintiff never read those statements.  A different plaintiff and different facts may or may not give rise to a fraud by omission claim against Carrier.  But this plaintiff and these facts do not.

In dismissing the prior version of Sumer's complaint, the Court noted that the complaint did not plausibly allege that Carrier was aware of material facts about the corrosion issue beyond those disclosed in the 2007 brochure.  Sumer was therefore on notice of the need to allege "additional facts showing that Carrier was aware that the susceptibility of copper coils to formicary corrosion was a more significant problem than Carrier disclosed in its ArmorCoat brochure," Docket No. 27.  Because he failed to adequately do so, the Court concludes that any further amendment would be futile.  *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).  The SAC is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: June 10, 2015

_____
VINCE CHHABRIA
United States District Judge